First case for argument this morning is 15-5146, Frankel v. United States. Mr. Valens. Good morning, Your Honor. May it please the Court. My name is Matthew Dowd and I represent the appellant, David Frankel, who is sitting next to me at the council table today. As the Court knows, there are two main issues in this case that deals with a robocall challenge that was sponsored by the Federal Trade Commission. And the two issues are the breach of contract issue and the procurement issue. And I'd like to first turn to the breach of contract issue. And we think that this is an important case. It's a case of first impression for this Court. It deals with the question of whether the contest and the judge's decision in this particular contest are reviewable. The contest was conducted under the American— What's your relief? I mean, you had 797 applicants here. Yes. All but one didn't win. So each of them, I guess, in your view, would be available, would be eligible to bring a challenge such as yours to this Court? Not—Your Honor, no. Not everyone can do that. And that's what puts Mr. Frankel in a rather unique position. Because what he did here is before filing the suit, he filed a FOIA request. And based on the information that was revealed during the FOIA request, there were clear indications that what the judges did violated the rules. They changed the judging criteria. But in addition, so you have that one requirement. And it would apply to all applicants. Yes, that would apply to all applicants. But the way the judging criteria were ignored directly affects Mr. Frankel's submission. Well, doesn't the—don't the contest rules require a blocking solution? Do you agree with that? Yes. And they provide—in the rules, Judge Dyke provided a specific definition for blocking, yes. Okay. So if a contestant didn't provide a blocking solution, that contestant would not have standing to sue, right? I would agree with that, Your Honor. Yes. Okay. So did Mr. Frankel supply a blocking solution? Yes, Your Honor. But it's not a technological blocking solution. His proposal was to identify the illegal callers and to prosecute them, right? No, Your Honor. With respect, it's more complicated than that. And that brings up two important— Well, what's more complicated about it? Well, because, Your Honor, it's not just about prosecuting. It's about working with carriers to provide a technical solution on preventing calls from these robocallers from the source, as opposed to the, quote-unquote, winners that were selected. But he didn't propose a blocking solution at the source, right? No, he did, Your Honor. Yes, he did. Absolutely. I've looked at his proposal. I didn't see that he proposed a blocking solution. Well, let me first address a premise to that, because it goes to an important point in the posture of this case, which is ruled on summary judgment. And the federal— But tell me where he proposed that blocking solution. I've read his proposal, and it No, well, his proposal is at 159 in the Joint Appendix. And if you look at A170, for example, the second paragraph—and I will preface all of this, is that these are technical, complicated solutions. And that's why we had two of the three judges who were technical people. Our technical solution is a little different. It's really a tracking and enforcement tool. In other words, you prosecute the people. No, it's more complicated than that, Your Honor, with respect. And it's not just a prosecution tool. It's more an effective enforcement tool, working with carriers by preventing the calls. And not necessarily preventing, but blocking them at the source. And so the way these telecom systems work, and the way the phone call systems work— You said the technology doesn't prevent robocalls, per se. Correct, Your Honor. I'm confused. I'm going to interrupt this discussion of the technology, because my understanding is that we haven't crossed the bridge of the right to challenge the decision of the judges, even if we were to assume that Mr. Frankel's suggestion was the same as one of those that received the award. Is that correct? I'm sorry, could you repeat your question, Your Honor? The issue before us that was decided is that in view of the contract terms, the contest terms, those who do not receive the award, these hundreds of people who provided suggestions who are not among the two selected as a tie, that there is no—because of the terms of the contest— there is no opportunity to challenge the judge's decision. Don't we have to cross that bridge first? Yes, Judge Newman, that's correct. And that brings up a separate issue from your question, Judge Dyke. I'd like to address both. It's a separate issue, but if we don't cross that threshold, do we reach the other question as to the merits of the proposal? No, Your Honor, but I think we've made it clear, and the case law has made it clear that we've decided, and the government hasn't decided any contrary case law, is that when you can establish, or at least allege, that the judging criteria or the rules of the contest have not been followed, then that gives a party a right to challenge the contest in court. The Johnson v. BP oil case is a classic example. What rules were not followed? Well, there are three primary rules. One requiring a blocking, that the winners block the robocalls. The second was that the judging criteria required weighting the scores for a strong preference for solutions that worked on both types of phones, both wireless and landline phones. And it's clear that the judges, and this is clear from the deposition testimony, that the judges ignored that requirement. And the third is also the numerical scoring. And if you look at the way this process was developed, the scores were only applied after there was some selection and winnowing down. Is there anything in the rules that required a numerical score for each of the entries? Your Honor, with respect, that's the only way this could be feasibly done. And Judge Bellowden, in his deposition testimony, acknowledged that you had to score and it was required by the rules of the contest. Wait a second. These cases, and I've read all these cases, most say that if there's an irregularity or a gross mistake, maybe you can sue despite the preclusion provision of the rules, right? Yes, Your Honor. So you have to show at least a clear violation of the rules, right, in order to sue. Yeah, and I think that falls under the irregularity category. So you have to have a clear violation, right? Yes, and that's what we show here. And so that's the problem when you say that the only feasible way that the rules could work is to have an individual scoring. It seems to me what you're doing is you're challenging the judgments that were made by the judges here rather than alleging a clear violation of the rules. With respect, Judge Dyke, I don't think we are. I mean, the scores set out three categories. They put numerical weights. The first category, does it work, is worth 50% of the score. In the end, the judges applied numerical scores. And in fact, and I think this is the most egregious aspect of this whole process, is that Mr. Frankel's submission, when they start— Well, Rule 9 sets forth a judging criteria, and it says the submissions will be scored, will be judged according to the criteria. And the criteria, by necessity, include numerical scores. And Judge Belovin acknowledged during his deposition that scoring is required. And in fact— It's only required for solutions that the judges consider to be blocking solutions, and they didn't consider this one to be a blocking solution. With the utmost respect, Judge Dyke, I wholeheartedly disagree, because when they started the process, one of the judges actually scored Mr. Frankel's submission. They gave him one of the top scores. And in fact, it was a score that was equal to a score of one of the ultimate winners. Now, only when the judges implemented this new filtering requirement, after the judges noted that this process was untenable, that they had too many submissions, that some of the judges were only working on weekends, only after the implementation of that filtering requirement did Mr. Frankel's submission get knocked out. What did the rules preclude then from doing this sort of filtering requirement, from culling out some of those at the bottom and not scoring them, and only scoring the top? Where in the rules does that kind of procedure prohibit? Your Honor, I think any time you have a way to score a contest, and the judging criteria include numerical categories, 50%, 25%, 25%, that inherently and necessarily requires a numerical score, and that's exactly what they did. That's what the judges started doing. But you're not relying on a clear provision of the rules. You're relying on your interpretation of the rules. And the problem is you can't challenge the judge's interpretation of the rules. You can only make a challenge if there's a clear violation, and you're not able to show that there was a clear rule here that was violated. Your Honor, if you go back, I think, to the case law of Carlini, for example, talks about the judges can't apply its own interpretation of the rules, meaning that it can't interpret the rules as contrary to the plain meaning of the contract. And this goes to the general interpretation of this contract. And the most reasonable, in fact, only reasonable interpretation of the contract is when you set forth judging criteria, and some of them are ignored, such as the categories and the numerical categories, that's a violation of the rules. Otherwise, we're left with a process, and this is what this process was. We're left with a process where they find out there are too many submissions. They have a staffer categorize the submissions. Within three days after the categorization by the staffer, they select two winners who just happen to have the same score, and only after that fact they score them. That is not consistent with the way these rules are set up. So what is the judicial role, in your view? At what stage do we intrude into the process at the basic scoring, the initial culling of the 700 such submissions, or after the staffer had reduced them to 50, whatever the number was, we then look to see if they were fairly scored, or how would that have to work on your position? Judge Newman, I think it's a very simple process that any agency can follow. Just document how they've scored, and how they've at least analyzed all the submissions in accordance with the judging criteria. That wasn't done. Do you want us to tell them to do it again, or to write more detailed guidelines as to be applied? Or if one accepts the premise that things were done hastily, or I'm not sure what the premise is, but that there's some sort of flaw, what is the judicial role to remedy it? Well, I think at a minimum here, Your Honor, the government repeatedly says that Mr. Frankel's submission doesn't work, and that's contravened by the fact that he was scored and he received a top score. At a minimum, given this is a summary judgment against Mr. Frankel, there's more factual development to figure out here. But in addition, we have to make sure that the agency complies with the rules. And here there was no compliance. There was complete ignorance of the requirement that the submissions work for both types of phones. That's readily admitted in the deposition testimony. And to get to your answer specifically, there are several forms of relief here. We can remand it to the trial court for a full trial on the issue. That brings up the procurement issue, which I haven't addressed and I would like to take a minute to address if the court wants to entertain some – But you can't – even if everything – we agreed with everything you said about the improprieties and the problems we had in the context, nobody would be in a position to know. Your client may prove up where he was, but I don't think he's ever going to be able to prove vis-à-vis the other candidates that he exceeded theirs. Whatever they did to him, they did to the others as well, right, and whatever they failed to do with respect to his submission, they failed with respect to 786 other submissions, right? That's correct. So he can't prevail. He can't demonstrate that he was entitled to the $50,000 under any proceeding we've got in mind, right? Well, that gets to the procurement, which we believe is also properly classified as a procurement under procurement law, and we can – it's sort of a bid protest, and so you have the agency rerun the contest. And that's certainly an option. There's nothing to preclude this contest from being classified as a procurement because the FTC is clearly soliciting the services of individuals to provide them with submissions. You say there's nothing that would preclude them from calling it a procurement. That's a little different by saying that they were compelled to consider this as a procurement contract, right? Yeah, and maybe I should be a little more forceful on that. I think under the law, when you look at 6303, for example, this prize contest is properly classified as a procurement. In fact, when you look at the memorandum from the Office of the Executive President from March 2010, the OMB specifically says that these types of contests can be done under procurement authority of the agency. But isn't there a difference between whether they can be done and whether they must be done? Absolutely there is, but when you look at the facts of this contest, we believe and strongly believe that it falls under the procurement. The government doesn't argue that it's a grant or it doesn't argue that it's a cooperative agreement. It's clearly not a cooperative agreement. No, I don't think they're arguing that. Exactly, and so I think if you look at the government's red brief, at points in the procurement section they're saying, well, this isn't even the contract. I don't think there's any dispute that there's a contract formed here. Decades of case law support that when you have these prize competitions, a contract is formed. And so there's clearly a contract, and our point is that we've shown a breach of the rules, and once we've gotten to that point, we say, well, what's the remedy? And if it's a contract, it could fall under the procurement. I see that I'm into my— Yeah, well, we'll restore two minutes. Thank you, Your Honor. Thank you. Morning, Your Honor. May it please the Court. I'd like to start by addressing in the order the questions were presented, some of the questions raised by the Court. Could you just start by talking about whether or not you agree with Mr. Dowd that there was a violation of the rules, and if not, why? No, Your Honor, we disagree with that sentiment, and we believe that's an unfair characterization of what were the undisputed facts before the trial court. The chronology of events does not support the narrative that Mr. Dowd is trying to present, and the trial court found this undisputed because we can strictly look at the documents, the sworn deposition testimony, the post-contest debriefing about what that process was, and what that process shows is the judges reviewed all the submissions, all 266 of them. Each of the judges independently did that. They did express frustration at the start, the lack of creativity in some of the submissions. Did they give numerical scores to each of the submissions? They did not. Were they required to? No. If you look at the rules, and this is in the index, 43 through 48, there is nowhere that it says every solution had to be scored. But his basic complaint is that they imposed a filtering requirement on the submissions and didn't really consider the ones that didn't provide a filtering requirement, right? And he says that that's a violation of the rules, so address that, would you? Yes. First of all, I'll answer that in two ways. Number one, the idea that there was a filtering requirement imposed is merely another way of saying when the judges thought my solution wouldn't work and eliminated it, that was not in accordance with the rules. It's merely going back to the criteria. It wouldn't work because it wasn't a blocking solution? Well, so that argument is raised. That goes a little bit more to the merits, and I'd be happy to answer that question. Mr. Frankel's solution is what the judges called a traceback solution, meaning it traces the multiple hops between. And for that reason it wouldn't work. Yeah, because it would require multi-jurisdictional enforcement, multi-carrier cooperation. It would require private phone companies to disclose all their private information and provide access to the government. The judges just didn't think that solution would work. They told Mr. Frankel that at his deposition. And Mr. Frankel at the end of his deposition said, I agree the judges weren't being unfair. They're not biased. They're not nefarious. They're not acting with malice. They didn't commit fraud. They didn't act in bad faith. It came down to a technical disagreement. And if the finality clause in the rules doesn't at least govern that, there's very little else it would guard against. Because when the contest rules say the determinations of the judges are final and binding, and you just say, I have a different interpretation of that rule. I'm going to bring a lawsuit. Then you're rendering the finality clause a nullity. And that's important because the FTC, when it decided to proffer this contest, did it under the impression that they wanted to stimulate innovation in the private sector. They wanted to get people interested in the problem. They anticipated a lot of people would supply solutions. And there would be, unfortunately, many losers. And so you had to have provisions that, hey, look, you guys are all smart people. You guys might disagree with what these very accomplished academics and people in the industry think, but their decisions are final. And you agree to that. Mr. Frankel admitted he read the rules. But wouldn't you agree that under the cases that if there was a clear violation of the rules that that suit would not be precluded? I would agree. I would phrase that a little bit differently by just repeating the standard. Fraud, bad faith, gross mistake, or irregularity. And to understand— Irregularity and bad faith or gross mistake would encompass a clear violation of the rules. It would, and I'll provide a few examples. Now, Kilberg is instructive. Mr. Frankel ignores it in his brief. But what Kilberg stated was when by mutual assent of the parties you decide that a certain individual will be the decision maker and those determinations are final, that determination is binding unless you can show gross mistake necessarily implying bad faith or a lack of honesty. Mr. Frankel admitted he had no bad faith. It really goes to the core of what judging is about. The rules said the judges will be impartial. We know here they were. The rules state that the judges will apply the criteria. We know here they were. Ultimately, what Mr. Frankel disagrees with is, well, I would have weighted things a little differently. Well, basically he's saying my solution is workable. They made a mistake in concluding that it wasn't workable. That's what it comes down to. And that's not a clear violation. That's not a clear violation of the rules because anybody can disagree. A number of people can disagree. We have 800 contestants in this competition, and Mr. Frankel is probably not the only one that disagrees with what the judges did. This honorable panel may disagree, but at the end of the day, we have to enforce what was agreed upon in the rules because this is what the FTC conditioned the contest on, not only that, but there was a release clause that said if you are one condition of applying for a solution in this contest is that any liability arising from your participation in the contest, you're waiving it. That is one condition. We know there are going to be a lot of interested people. We can't afford to have these competitions if every time we hold one, we get hundreds of lawsuits and we have to defend all of them. Speaking of which, this is outside of the record, but is this a practice that is commonly used by agencies, by different agencies? The contest, Your Honor? Yeah. I believe since 2010, since it was passed in statute by President Barack Obama, yes, it is something that agencies are really looking to do because this is just a matter of common sense. Sometimes the private sector does things better than the government can, and you want to tap into that knowledge. One way to get people interested in solving public problems is to give a little prize, give a little reward. It's a very cost-effective way for the government to do something that would benefit the public. The FTC's overall agency mission is to protect consumers. They saw this as one way to do that. It wouldn't be very cost-effective if 700 people could sue. No, it wouldn't. Exactly, Your Honor. And I think that's why these clauses have to be enforced, and that's why the FTC envisioned putting these in as a condition for contestants' participation in the contract. Even assuming, we can ignore that the contest rules just did not contain these provisions, even then, Mr. Frankel cannot articulate a breach. I mean, what he's boiling this down to is, well, my solution wouldn't be scored, and my understanding of the rules was that every solution would be scored. We asked Mr. Frankel this at deposition. Where in the rules does it say that? And he couldn't point to anywhere in the rules where it said every solution would be scored. And the fact of the matter is it's because the rules didn't say that. He had to cobble together three sections to get the suggestion in his mind that somewhere along the lines, he believed every solution would be scored. What the judges understood, and I believe this is an unfair characterization of Mr. Bellivan's testimony, was that eventually some of the solutions would be scored. So at what stage, if any, would the government acknowledge that there ought to be a basis for a failed contestant to come into court and expose the entire system? Yeah, I'll address this one at a time. First, I'll address the finality clause. Now, that's fraud, bad faith, gross mistake, or irregularity. What that comes down to, according to Kilberg, if you give Kilberg, which is the root precedent regarding all contest cases, including Gilmore-Fergile, all those cases rely on Kilberg as the source. Is that fraud? A charge of fraud? Not only a charge of fraud. It basically has to offend basic judging principles. The contestant was robbed of being judged. There are certain examples that Mr. Frankel provides in his brief. For example, flipping coins, throwing darts on the wall. Those would be clear violations. If that was uncovered in this case, a persuasive case could be made that that finality clause could be ignored. In this case, what Mr. Frankel is quibbling with is, you didn't score my solution. Well, the rules didn't say that. Well, you didn't take this sub-factor regarding cross-platform workability across landlines and mobile phones and make that outcome determinative. Well, I'm sorry, that was vested to the discretion of the judges. Everyone understood this going in. You can't nitpick with the rules when all evidence shows that the judges, when they were carrying out the rules and carrying out their function, acted in good faith, tried the best they could, and Mr. Frankel acknowledged at his deposition these people are reasonable people with reasonable integrity generally. Yeah, but this procedure was kind of a mess, and it's nobody's fault, but they got far more applicants than they expected, right? And there weren't enough resources dedicated to the judging thing, so people were all out of sorts and not knowing and running around and deciding how to fix it and how to get it done, right? I'll say it this way. The competition was a rousing success. They got 800 people interested in the problem. Well, your success may be chaos on the other end of that. I mean, there were problems with this. Your position is just that none of that rises. None of that matters, because the rules contemplated the uncertainty and said, look, there's no strict criteria. If you look at the rules, the contest criteria on page 46 of the appendix, almost everything is a value determination. How well does it work in this way? Will it do this? These are all factors you consider, but ultimately all that decision-making is vested in the determination of the judges. When the judges were deciding to winnow it down to the filtering category, they were discussing all the solutions. They saw fatal flaws in all of them across broad categories. They specifically told Mr. Frankel, look, tracebacks just won't work. There's a lot of problems associated with that, including multi-carrier cooperation, access to private data, multi-jurisdictional enforcement. A lot of these calls come from third-world countries where they have no interest in enforcing American laws against their indigenous people. It just doesn't work that way. This was the determination that judges made. And at the end of the day, we might argue, well, you could have documented it better. You could have had more documentation. You could have scored everything, even though the rules didn't expressly require it. You could have done that. But at the end of the day, the critical question is, when the judges did what they did, was anything in direct contravention of the rules such that it would rise to the level that would offend the judging process, critically offend the judging process? The examples that Mr. Frankel raises are not even close to this case. He talked about a dog show where you award the prize to a poodle in a German shepherd category. This case is not even close to that. Judge Dyke, you said a clear violation of the rules. I would agree with that, except I would say it has to offend basic principles of judging such that your solution was not judged. Can we move on to procurement? Absolutely. Why is this not an exchange of property for money? You got this thing, the other guy got 50, he paid him $50,000 for it. And why doesn't that, therefore, fall into the category of procurement? I believe Lucas is instructive if we're going to analyze it under that specter. Now, Lucas was a prize competition for the best design for the Korean War memorial. Ultimately, there was one contestant who won that. And that contestant had a lot of design changes to his solution and tried to get injunctive relief against the government because they were about to install or construct a design that he didn't originally propose. What the court said is, hey, look, this is not a procurement contract. The contest contract ended when they awarded you the prize money. If the government wanted to procure your idea after that, they would have bought it from you and then chose to enter into a procurement contract. But... Is that what distinguishes it from a procurement contract because it ends at a specific date? Is that the distinguishing factor? No, and I think the argument that Mr. Frankel raises is, well, you're acquiring, he calls it a license for solutions. But what the rules made clear is all intellectual property rights remain with the owner, the inventor. When you submit your idea, the government is not claiming ownership of it. All intellectual property rights remain with the solution proponent. Didn't the contract terms give the government the right to use the subject matter of the solutions? Yes, Judge Newman. There was license language, but it's important to know the context of the license language because that license was merely used to evaluate the submission in case the solution had to be tested. The judges had to judge. So if it was a hardware... Just the right to evaluate? It was broader than that? It was broader than that in the sense that eventually they had to publish the winners. So they asked for a license in that regard. Let us test your solution, and then ultimately if you win, let us publish it. There were also honorable mention prizes. So when the government contracts with somebody to acquire a license, that's not a procurement? Not in this respect. And I would submit that there might be variations where the government acquires license where you can call it under 6303 an acquisition of a property or service, but ultimately it has to come down to what's the principal purpose. Is the principal purpose of a contest to acquire a property or service? We know that's not the case here because it's baked into the statute. What is the principal purpose? To stimulate innovation in the private sector. And the government gets no benefit out of it? I mean, this guy comes up with a terrific solution. It's a problem that the FTC has been working on for years, and he just walks away with it and they give him $50,000? I'm not sure if the FTC has been working on it for years. I mean, one reason why this competition was promulgated was because they wanted to get private sector ideas. They wanted to get it for themselves so that they could use it or employ it. No, no, no. The aim of the FTC was not to get the best idea and then ultimately purchase it or gain ownership rights from the inventor. It was literally this idea that if you get a private sector interested in solving public problems, it just benefits the public in general. So if the primary purpose were to acquire a license, it would be a concern. That would fulfill the first prong of the statute. The next prong is it would have to provide a direct benefit to the United States. Now here, this is in the language of the statute, or I'm sorry, the language of the contest, but it was to advance the agency's overall mission. Hymas decided this. Advance of the agency's overall mission is an indirect benefit. It's not a direct benefit. And the indirect benefit is to stimulate ideas in the private sector and have them then develop it all separate and apart from anything the FTC does. Yes, when you can pull together the private sector knowledge to address public problems, it's a very powerful tool to combat a very serious public problem. The FTC doesn't govern how that's done, but if you can get people interested in it on their own volition, spending their own time. Now the FTC could have entered into a procurement contract with a contractor and say, invent a hardware solution that does X, Y, and Z, and maybe even do performance-based specifications or something like that. By and large, that would be far less effective than what the contest did, which is you get 800 people just thinking about a problem. You pull that vast knowledge from... Are there any studies done in terms of the impact or the effect? I believe Mr. Frankel cites a White House report. I believe they reference certain studies in there. I haven't personally read those studies. I have read the White House report, and it cites data suggesting that this is a very innovative way to get people interested in an idea. And they've generally seen, and this is one thing that was cited, they've generally seen that people outside the industry actually provide the best ideas because they provide a fresh set of eyes into a very common problem. If there are no further questions, I yield the rest of my time. Thank you, Your Honor. Thank you, Your Honor. You know, on the procurement point, I'd like to address Lucas. Lucas provides really no analysis of the issue, and I will also note that in Lucas itself, in that case, the government actually argued that that contest was a procurement. So it's really, it's not that far outside of the box to say that this prize competition is a procurement just like the one in Lucas. Second is that we've heard repeatedly... We didn't reach that question, did we, if we disagree with you that there was a clear violation of the rules? You don't... It's a question that you don't have to, you don't at all. You don't necessarily have to. I think it's still an important question, because you have a contract. There's no dispute that it's a contract, and there might just be a breach of a contract, but it might be a contract that doesn't fall under the procurement statute, but our position is that it does. So you can reach both issues. But I will like to emphasize, and I think this is a really important point, it goes to the facts of this case, is that there's been just repeated statements that Mr. Frankel's solution doesn't work, and that the judges told him that it wouldn't work. All of this is after the fact. The only evidence in the record about Mr. Frankel's submission is that it was scored as one of the top submissions. It tied one of the eventual winners. That's the only evidence with respect to the viability of Mr. Frankel's submission, whether it worked and whether it was scored. But that's why I ask what you want this court to do. Do we look at the top submissions and say, no, in our view, these are the ones that should have prevailed? I think that's the easiest way to do it, Your Honor, because their position is Mr. Frankel's doesn't work. Our position is if we just compare ours to the two top winners, ours must necessarily work when you apply the rules correctly, when you apply the requirement that it has to work or the preference, the strong preference, that it works on both types of phones, that it actually blocks phones from ringing. So you want us to be the contest judges and decide the question of workability? No, Your Honor. With respect, I think the easier and the better way is to remand this to the trial court, get a full record. Remember, this is on summary judgment. This is just a small snippet of the record that was filed in the summary judgment motion by Mr. Frankel pro se. And we think there's a lot more evidence that supports our case. All of these questions about the viability and the usability of Mr. Frankel's submission all go to the facts that need to be developed. You know, we've gotten past the point where I think that there are rule violations or at least criteria. And I think when you look at Rule 9 and when you read Rule 9 in the contest, it says specifically that the submissions will be judged. And the following rule, Rule 10, describes how they will be judged. And it has numerical requirements. And I've never seen an instance where there's some... Do they have to be judged even if they're not workable? If there's evidence... Do they have to be judged if they're determined not to be workable? Judge, no. If there's evidence in the record that a particular submission was deemed unworkable, I would agree with you. But there is no evidence in this case. And the only evidence is the single score for Mr. Frankel's submission where it tied one of the eventual winners. So this isn't the case where actually his submission was deemed unworkable. If you look at the deposition transcript carefully, every single one of those sites that I believe are on the red brief of page 30, every single site is a generality about a category of solutions that they think won't work, these so-called traceback solutions. But they give no specifics. And this is all contravened by the only point of evidence that says that Mr. Frankel's submission was the top scorer before they implemented this filtering requirement. And our ultimate point... And I agree with my colleague that these are important mechanisms to get ideas and innovation. The problem that we have, and I think the problem that everyone will have, is that if there is no transparency, if agencies are allowed to change the rules on the fly and that there's no way to review these cases, it will undermine the confidence in these systems. And that's not the way these prize competitions are supposed to work. Thank you. Thank you, Your Honor. We thank both counsel and cases.